IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STRATEGIC WEALTH GROUP, LLC and JEROME BUTKUS, Plaintiffs, | : : : : | CIVIL ACTION |
| v. | : : : | No. 10-0321 |
| MATTHEW CANNO, BRET BINDER, PHILADELPHIA SETTLEMENT BROKERS, LLC and BINDER & CANNO, LLC, Defendants. | : : : : : | |

MEMORANDUM

**Norma L. Shapiro, J.**                                                                                          January 31, 2011

      Before the court are two motions: (1) to dismiss the amended complaint of Strategic Wealth Group, LLC ("SWG") and Jerome Butkus ("Butkus") under Federal Rule of Civil Procedure 12(b)(6); and (2) to strike under Rule 12(f). Plaintiffs' amended complaint alleges: violations of the Stored Communications Act, 18 U.S.C. § 2701(a); the United States Computer Fraud and Abuse Act, 18 U.S.C. § 1030; and nine state law torts. There is jurisdiction over the federal claims under 28 U.S.C. § 1331. Plaintiffs assert jurisdiction over pendent state-law claims under 28 U.S.C. § 1367. Defendants' motions to dismiss the federal claims and the Pennsylvania statutory claim will be denied. The New Jersey statutory claim will be dismissed under 28 U.S.C. § 1367(c)(1). The state common-law claims will be dismissed under 28 U.S.C. § 1367(a). Defendants' motion to strike will be denied.

1

I.  **BACKGROUND**

The following factual allegations are accepted as true. *See Philips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

Plaintiff Jerome Butkus was employed by Philadelphia Settlement Brokers ("PSB"). After his voluntary departure from PSB in October 2007, Butkus formed SWG. On May 1, 2008, defendant PSB filed an action that alleged breach of contract and related tort claims in the Philadelphia County Court of Common Pleas ("Common Pleas action") against Butkus, SWG, Nicholas Sawuk, Park Venture Advisors, LLC, Phoenix Life Insurance Company and Crump Life Insurance Services, Inc. Co-defendants Binder & Canno ("B & C") represented SWG in the action.

On January 12, 2009, defendant Binder e-mailed plaintiffs and Sawuk. He threatened to send a letter to unnamed third parties about the ongoing litigation unless they settled the Common Pleas action on terms favorable to PSB. When no settlement was reached, Binder, acting as counsel to PSB, served forty-seven subpoenas duces tecum by certified mail upon parties defendants assumed were doing business with Butkus and Sawuk. A letter accompanying each subpoena accused Butkus and Sawuk of wrongdoing, and advised its recipient to cease commercial transactions with the two men to avoid exposure to potential tort liability. Though B&C designated each subpoena as a deposition subpoena duces tecum under Pennsylvania Rule of Civil Procedure 4009.21, PSB took no depositions. Under Pennsylvania Rule of Civil Procedure 4009.21, SWG, Butkus and Sawuk did not have an opportunity to object to any subpoena prior to service.

On May 4, 2009, as part of the Common Pleas action, B&C served requests for admission

and interrogatories on Butkus and SWG. Attached to the requests for admission were copies of e-mails accessed and printed from personal, password-protected e-mail accounts of Sawuk and Butkus. Neither Sawuk nor Butkus had allowed SWG access to their private e-mail accounts. Neither man had provided the attached e-mails to SWG.

On May 15, 2009, B&C filed a motion for sanctions. Attached to the motion was the prior-filed request for admissions, including e-mails from the accounts of Sawuk and Butkus. The motion was not redacted, and included social security numbers, private passwords, confidential business communications and the licensure information of Sawuk and Butkus. B&C withdrew the motion on May 22, 2009.

On June 15, 2009, Sawuk, Butkus and SWG filed a motion for protective order to seal the May 15 motion for sanctions and to bar the use of any e-mails obtained from the personal e-mail accounts of Sawuk or Butkus. The Court of Common Pleas scheduled an August 10, 2009 hearing on the motion, but PSB voluntarily dismissed the action on August 7, 2009. At the time of the voluntary dismissal, motions for judgment on the pleadings were pending against PSB. All but one of the tort claims asserted in the Common Pleas action are now time-barred.[1]

In addition to unauthorized access to his e-mails, Butkus claims emotional distress as a result of the Common Pleas action. Plaintiffs Butkus and SWG aver the action interfered with existing agency relationships with Crump Life Insurance Services, Inc and ING, and potential business relationships with Park Venture Associates, LLC.

---

[1] Only PSB's claim of breach of an employment agreement remains viable under the relevant statute of limitations.

## II. MOTIONS TO DISMISS

Butkus and SWG's joint amended complaint alleges violations of the Stored Communications Act, the United States Computer Fraud and Abuse Act and nine state-law torts.[2] All defendants move, in separately-filed motions, to dismiss Counts Four, Five, Six and Ten. Defendants Binder, Canno and B&C move to dismiss Counts Seven and Eight. Also, Binder and B&C move to dismiss Counts Nine and Eleven, and Canno and PSB move to dismiss Counts One and Three.

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss all or part of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the plaintiff pleads sufficient factual content to allow the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 129 S. Ct. at 1949. The plausibility standard is not a "probability requirement," but it does demand more than a possibility that a defendant has acted unlawfully. *Id*. Defendants bear the burden of demonstrating the plaintiffs have not stated a claim upon which relief can be granted. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

---

[2]The pendent state law torts are: 1) Count III - violation of the Pennsylvania Stored Communications Act; 2) Count IV - violation of the New Jersey Computer Related Offenses Act; 3) Count V- Malicious Prosecution; 4) Count VI - Abuse of Process; 5) Count VII - Defamation; 6) Count VIII - Commercial Disparagement; 7) Count IX - Intentional Interference with Existing and Prospective Contractual Relations; 8) Count X - Invasion of Privacy; and 9) Count XI - Concert of Action.

In deciding a motion to dismiss, the court may consider the allegations in the complaint, exhibits attached to the complaint and matters of public record, including judicial proceedings. *S. Cross Overseas Agencies v. Wah Kwong Shipping Grp., Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999). The court need not assume the plaintiff can prove facts not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 (3d Cir. 1998), nor credit "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

### A.     Violation of the Federal and Pennsylvania Stored Communications Acts

Defendants Canno and PSB move to dismiss plaintiffs' claim under the federal Stored Communications Act, 18 U.S.C. § 2701(a), and the Pennsylvania Stored Communications Act, 18 Pa.C.S. § 5741. The Pennsylvania statute parallels its federal counterpart; the analysis is identical under both statutes.[3] *See Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 114 n. 9

---

[3]18 U.S.C. § 2701(a) provides:

(a)     Offense - Except as provided in subsection (c) of this section whoever -
         (1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or
         (2) intentionally exceeds an authorization to access that facility; and thereby obtains, alters or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system shall be punished as provided in subsection (b) of this section.

18 Pa. Cons. Stat. § 5741 provides:

(a)   Offense - Except as provided in subsection (c), it is an offense to obtain, alter or prevent authorized access to a wire or electronic communication while it is in electronic storage by intentionally:
         (1) accessing without authorization a facility through which an electronic communication service is provided; or
         (2) exceeding the scope of one's authorization to access the facility.

5

(3d Cir. 2003). The sufficiency of plaintiffs' claims under the two statutes will be considered together. Defendants claim previously opened e-mails are not protected by either statute. Because plaintiffs' complaint alleges the relevant e-mails were accessed after having been opened by their intended recipients, defendants assert there can be no facially plausible claim under either the federal or Pennsylvania Stored Communications Act.

In *Markert v. Becker Tech. Staffing, Inc.*, 2010 WL 1856057, at *6 (E.D.Pa. May 7, 2010), the court held the federal Stored Communications Act "applies when information is retrieved from electronic storage even after transmission is complete." The *Markert* court's decision was based on Third Circuit Court of Appeals dicta suggesting the Act may protect opened e-mails as "backup protection" of electronic transmissions subject to its provisions. *See Fraser*, 352 F.3d at 114; *accord Integrated Waste Solutions v. Goverdhanam*, 2010 WL 4910176, at *7 (E.D.Pa. Nov. 30, 2010). That dicta is consistent with the majority approach to the applicability of the Stored Communications Act to opened e-mails. *Theofel v. Farey-Jones*, 359 F.3d 1066 (9th Cir. 2003).

The *Theofel* court expressly rejected the defendants' argument that "backup protection" includes only temporary backup storage pending delivery, and not any form of "post-transmission storage," as contrary to the plain language of the Act. Considering the statute's definition of "electronic storage,"[4] the court stated:

---

[4] 18 U.S.C. § 2510(17) defines electronic storage as: (A) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and (B) any storage of such communication by an electronic communication service for purposes of backup protection of such communication.

6

> In contrast to subsection (A), subsection (B) does not distinguish between intermediate and post-transmission storage. Indeed, *Fraser*'s[5] interpretation renders subsection (B) essentially superfluous, since temporary backup storage pending transmission would already seem to qualify as "temporary, intermediate storage" within the meaning of subsection (A). By its plain terms, subsection (B) applies to backup storage regardless of whether it is intermediate or post-transmission.

*Theofel*, 359 F.3d at 1075-76. *Theofel* elaborates on our Court of Appeals' comments in *Fraser*, 352 F.3d at 114, and is consistent with the Third Circuit's assumption that an opened e-mail retained on a server is in the backup storage contemplated by the Act. District courts have also decided that opened e-mails are covered by the Act. *See Pure Power Boot Camp v. Warrior Fitness Boot Camp*, 587 F.Supp.2d 548, 555 (S.D.N.Y. 2008); *Cardinal Health 411, Inc. v. Adams*, 582 F.Supp.2d 967, 976 (M.D. Tenn. 2008); *Fischer v. Mt. Olive Lutheran Church, et al.*, 207 F.Supp.2d 914, 926 (W.D. Wis. 2002).

Defendants claim there is a "debate over [the Act's applicability to] post-transmission storage," *see Goverdhanam*, 2010 WL 4910176, at *7, but given the assumption of the Court of Appeals in *Fraser*, plaintiffs' claims under the federal and Pennsylvania Stored Communications Act are not "footless conclusions of law" subject to dismissal under Fed. R. Civ. P. 12(b)(6). *Morse*, 132 F.3d at 905. The motions to dismiss Count I and Count III will be denied.

---

[5]The Ninth Circuit Court of Appeals refers to a district court decision cited by defendants as authority for their position that opened e-mails are not covered by the Act. *See Fraser v. Nationwide Mut. Ins. Co.*, 135 F. Supp. 2d 623 (E.D. Pa. 2001), *rev'd* 352 F.3d 107 (3d Cir. 2003).

**B.     Violation of the New Jersey Computer Related Offenses Act**

All defendants move to dismiss Count IV of the complaint, alleging violation of the New Jersey Computer Related Offenses Act, N.J. Stat. Ann. § 2A:38A-3 ("CROA").[6] Defendants claim the complaint fails to allege facts sufficient to recover under the New Jersey law.[7] Plaintiffs' complaint states Sawuk was a New Jersey resident at the time Butkus sent him e-mails that were obtained by PSB and Canno, and attached to the request for admission filed by B&C.

Defendants cite *Joseph Oat Holdings, Inc. v. CRM Digesters, Inc.*, 2009 WL 3334868 (D.N.J. Oct. 14, 2009), in arguing that a plaintiff must allege the computer or terminal used in the offense, or the damage caused by the offense, was in New Jersey to recover under the CROA. But, the Court of Appeals found genuine issues of material fact existed as to defendants' authority to access the disputed server. *See Joseph Oat Holdings, Inc. v. CRM Digesters, Inc.*,

---

[6]N.J. Stat. Ann. § 2A:38A-3 provides:

A person or enterprise damaged in business or property as a result of any of the following actions may sue the actor therefor in the Superior Court and may recover compensatory and punitive damages and the cost of the suit, including a reasonable attorney's fee, costs of investigation and litigation:
    a.    The purposeful or knowing, and unauthorized altering, damaging, taking or destruction of any data, data base, computer program, computer software or computer equipment existing internally or externally to a computer, computer system or computer network;
. . . or
    b.    The purposeful or knowing accessing and reckless altering, damaging, destroying or obtaining of any data, data base, computer, computer program, computer software, computer equipment, computer system or computer network.

[7]N.J. Stat. Ann. § 2A:38A-6 provides:

Actions brought under this act may be filed in the Superior court of the county in which (1) the computer which is accessed is located, or (2) where the terminal used in the accessing is situated, or (3) where the actual damage occurs.

2010 WL 5065037 (3d Cir. Dec. 13, 2010) (vacating grant of summary judgment and remanding case to district court).

In *Joseph Oat Holdings*, the CROA action arose after a New Jersey corporation accessed computer files on a server located in California. Defendants brought a counter-claim alleging violation of the CROA and a related California computer fraud statute.[8] *Joseph Oat Holdings*, 2009 WL 3334868, at *3. The district court presumed a New Jersey corporation being party to the action made the New Jersey statute applicable. *Id*. at *3, n. 11. *Joseph Oat Holdings* appears to be the only case discussing the reach of the CROA.

Under 28 U.S.C. § 1367(c)(1), a district court may decline to exercise supplemental jurisdiction over a claim that raises a novel or complex issue of state law. Whether the New Jersey CROA applies to e-mails sent to a New Jersey resident, but accessed on an out-of-state terminal, is best resolved in the first instance by a New Jersey state court. *See De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 311 (3d Cir. 2003). Count IV of plaintiffs' amended complaint, alleging violation of the New Jersey CROA, will be dismissed without prejudice.

### III. Disposition of the State Common-law Claims

28 U.S.C. § 1367(a) provides for the exercise of supplemental jurisdiction by district courts over "claims that are so related to claims in the action within [their] original jurisdiction that they form part of the same case or controversy." Plaintiffs' federal and state common-law actions do not arise from "a common nucleus of operative fact." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). Claims arise from a common nucleus of operative fact when,

---
[8] California Penal Code § 502(j).

9

"considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding." *Id*.

A district court may not assert supplemental jurisdiction "over state claims that are totally unrelated to the federal claims that form the basis of the court's jurisdiction." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 302 (3d Cir. 1998). In *Lyon v. Whisman*, 45 F.3d 758, 761 (3d Cir. 1995), the district court had original jurisdiction to hear claims under the Fair Labor Standards Act ("FLSA"). *Lyon*, 45 F.3d at 758. The Court of Appeals held the district court's exercise of supplemental jurisdiction over state contract and tort claims, arising from an alleged failure to pay bonuses, was in error. *Id*. at 764. The only link between Lyon's FLSA and state-law claims was the employer-employee relationship between the parties. *Id*. at 762. The conduct underlying the federal and state law claims was distinct. *Id*. at 763. The district court lacked jurisdiction over the state law claims. *Id*. at 764.

Plaintiffs' federal claims are premised on defendants' unauthorized access of plaintiffs' e-mails; their state common-law claims arise from defendants' conduct in prosecuting a prior state action against plaintiffs. While plaintiffs' e-mails were submitted as part of the Common Pleas action, the conduct giving rise to the federal claims is distinct in time and character from that underlying the various state common-law claims. Plaintiffs' federal claims are premised on statutorily-created computer crimes, but their state common-law claims all arise from torts related to an allegedly malicious prosecution. As in *Lyon*, the only nexus between plaintiffs' federal and state common-law claims is the relationship among the parties. This court does not have jurisdiction under 28 U.S.C. § 1367(a) to hear plaintiffs' state common-law claims.

Even if there were supplemental jurisdiction, the court would reasonably decline to exercise it. The state common-law claims, by their number and complexity, would substantially predominate over the federal claims; *see* 28 U.S.C. § 1367(c)(3) ("substantially predominate" standard). Section 1367(c)(3) "is not satisfied simply by a numerical count of the state and federal claims the plaintiff has chosen to assert," *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 789 (3d Cir. 1995), but declining to exercise supplemental jurisdiction is required when the nature of the state law claims would thwart "judicial economy, convenience and fairness to litigants." *Gibbs*, 383 U.S. at 726. Adjudicating plaintiffs' state common-law claims here would involve a distinct set of facts and complex issues of state law.[9] Plaintiffs' state common-law claims will be dismissed.

## IV. Motion to Strike

Defendants Canno and PSB also move to strike various references in plaintiffs' complaint to damages suffered by Sawuk, a non-party. Fed. R. Civ. Pro. 12(f) permits a court to strike any "redundant, immaterial, impertinent, or scandalous matter" from a pleading, but "motions to strike are generally disfavored." *Ramos-Vazquez v. PrimeCare Med., Inc.*, 2010 WL 3855546, at *10 (E.D. Pa. Sept. 30, 2010). Courts prefer not to "tamper" with pleadings. *Id*. A Rule 12(f) motion should be denied, unless "the allegations have no possible relation to the controversy and

---

[9]For example, there is uncertainty whether the torts of Malicious Prosecution and Abuse of Process - both claimed by the plaintiffs - were subsumed by the Dragonetti Act, 42 Pa.C.S.A. § 8351. *Compare Stone Crushed P'ship v. Kassab Archbold Jackson & O'Brien*, 908 A.2d 875, 877 n. 1 (2006) *with Langman v. Keystone Nat'l Bank & Trust Co.*, 672 F. Supp. 2d 691, 700 (E.D. Pa. 2009), *and Werner v. Plater-Zyberk*, 799 A.2d 776, 785 (Pa. Super. 2002).

11

may cause prejudice to one of the parties." *McInerney v. Moyer Lumber & Hardware*, 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002).

Plaintiffs' amended complaint asserted a number of Sawuk's grievances, but it was necessary to do so to establish the factual bases for plaintiffs' claims. Many of the e-mails accessed by defendants were transmitted between Butkus and Sawuk. By alleging defendants illegally accessed Sawuk's e-mail account and viewed transmissions from Butkus, plaintiffs support their claims that Butkus' account was also viewed without authorization. The allegations cannot be said to have no possible relation to the controversy. Considering the general disinclination toward granting motions to strike, defendants' motion will be denied.

## V. Conclusion

For the foregoing reasons, the motions to dismiss are granted in part and denied in part; the motion to strike is denied.